# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ROBBIE JORDAN

    Plaintiff,

    v.

BELTWAY RAIL COMPANY OF
CHICAGO and TIMOTHY COFFEY,

    Defendants.

No. 06 C 6024
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

**I. Background**

In November, 2006, Plaintiff Robbie Jordan filed a complaint against Defendants Belt Railway Company of Chicago ("BRC") and Timothy Coffey for relief from race discrimination and violations of the Family and Medical Leave Act ("FMLA"). Defendants now move for summary judgment on all claims. Jordan cross-moves for summary judgment on his FMLA claims. For the following reasons, I grant in part and deny in part Defendant's motion; I grant Jordan's motion in part and deny it in part.

**II. Standard of Review**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that

there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir.2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

**III. Statement of Relevant Facts**

Defendant BRC hired Plaintiff Robbie Jordan in 1993. Jordan was working as a yardmaster in August, 2006, when he sought intermittent medical leave for depression and anxiety. A primary responsibility of yardmaster is to follow company and industry safety rules and procedures while directing workers engaged in the makeup and breakup of trains and switching inbound and outbound traffic in the railyard. Defendants cite four incidents of formal discipline actions for workplace infractions involving Jordan that occurred between March and July 2006. Those infractions involved conduct related to communication altercations, failure to report to work on time, and failure to perform duties. Defendants also cite at least ten incidents for which Jordan received "informal counseling" for certain infractions such as excessive telephone use for personal calls, disorganized crew assignments, train delays, absenteeism and numerous communication issues. Jordan characterizes the counseling as harassment and discriminatory treatment (unrelated to his FMLA claims).

Defendant Timothy Coffey served as the Director of Human Resources for Defendant BRC throughout the events stated here.

On August 3, 2006, Jordan submitted to Coffey a Certification of Health Care Provider completed by his psychologist. The Certification indicated that Jordan was experiencing a

2

serious health condition under the FMLA which would require him to take off work intermittently in order to attend doctor appointments and provide "a day off work some weeks." The form further stated that Jordan would not be able to work on occasions when "there is actual or perceived harassment on job," at which times Jordan would be unable to perform "safety type related tasks."

After receiving the form, Coffey sent a letter to Jordan granting up to twelve weeks of unpaid, protected leave. In the letter, Coffey acknowledged that Jordan had requested intermittent leave but explained that BRC could grant only a full leave because of the "cited essential functions that [Jordan was] unable to perform." In the same letter Coffey attached a HIPAA Privacy Authorization form and requested that Jordan authorize his physician to speak with BRC about his condition. Jordan declined to execute the HIPAA authorization form. Jordan submitted a note written by his psychologist on August 30, 2006, stating that he was able to return to work. Coffey responded in a letter on August 31, 2006, that the faxed note was not sufficient, and that in order to return to work, Jordan must have his doctor complete the company's standard return-to-work form. He also enclosed another HIPAA authorization form, asserting that the release would allow BRC "access to information pertinent in determining job-related fitness for duty." In a face-to-face meeting on that date, Coffey also informed Jordan that he would need to undergo a fitness for duty examination before he could return to work.

On September 18, Jordan emailed Coffey to inform him that he would be meeting with his psychologist on September 19, 2006. He would request the doctor to complete the return-to-work form and obtain answers to any specific questions regarding his condition at that time. The next day, Coffey instructed Jordan to have the doctor complete the form and then make

3

arrangements to secure a return to work physical with a company-designated physician; Coffey did not give Jordan a list of questions to ask his physician for clarification. On September 19, 2006, Jordan met with his psychologist, who completed the return-to-work form. Jordan brought the form to Coffey's office on the same day and requested a copy of the form before he left the office. The parties agree that Coffey altered the portion of the form on which Jordan had written "Forced leave" to read "FMLA leave," but they disagree as to the reason that Coffey made the alteration. Jordan contends that Coffey made the alteration because Coffey wanted to demonstrate that he would not tolerate Jordan's complaint against Defendants' unlawful FMLA practices. Coffey claims that he altered the form to clarify to the doctor who would conduct Jordan's return to work physical that his leave of absence was related to medical rather than disciplinary reasons. After the form was altered, Jordan requested a copy of the unaltered form and obtained a copy from administrative aide Cindy Homan by grabbing it out of her hands. Homan immediately complained to Coffey about Jordan's conduct.

On September 22, 2006, BRC scheduled an investigation to ascertain facts and determine Jordan's responsibility in connection with his "quarrelsome, discourteous, and insubordinate behavior" toward Homan and Coffey. Because Jordan was still on leave, BRC postponed the investigation until his return to work.

On October 2, 2006, Jordan attended a return-to-work physical examination arranged by Coffey. After the examination, the physician referred Jordan to receive an examination concerning his mental condition in order to return to work. Jordan did not make an appointment at the referred facility.

Jordan filed the current action against Defendants on November 03, 2006, alleging violations of both the FMLA and 42 U.S.C. § 1981.[1] At the time of filing, Jordan was still on leave from the company.

In a letter dated January 9, 2007, BRC notified Jordan that his maximum leave under FMLA had expired and that he was accumulating unexcused absences. In that letter, BRC asked Jordan to have his treating physician or other health care provider treating him provide updated medical information regarding the status of his psychological conditions. Jordan did not respond to the communication.

On March 22, 2007, an investigation of the September 20, 2006 incidents took place. Jordan requested that his attorney be present for his questioning, but the request was denied pursuant to BRC's collective bargaining agreement that prohibits individual representation at grievance proceedings. Jordan declined to answer any questions relating to the September 20 incident. Defendants discharged Jordan as a result of his testimony at the investigation. Defendants now move for summary judgment on both the § 1981 and the FMLA claims. Jordan cross-moves for summary judgment on his FMLA claims.

---

[1] These claims are based on additional facts not recounted here because I am granting Defendants' uncontested motion for summary judgment on Plaintiff's remaining § 1981 claim (Count I). I previously dismissed Count II, Plaintiff's claim for retaliation under § 1981.

**IV. Discussion**

   **A. Plaintiff's § 1981 Claim (Count I)**

   Defendants move for summary judgment on Jordan's claim of race discrimination under 42 U.S.C. § 1981. Jordan does not contest Defendants' summary judgment motion with regard to his claim for race discrimination under § 1981. Therefore, I grant Defendants' motion for summary judgment with respect to Count I. Fed.R.Civ.P. 56(e).

   **B. Plaintiff's FMLA Claims**

   The FMLA entitles any eligible employee suffering from a serious health condition that renders him unable to perform the functions of his position to twelve weeks of leave during any twelve-month period. 29 U.S.C. § 2612(a)(1)(D). The Act also entitles an employee who takes leave under § 2612 to restoration to the original or equivalent position upon return from such leave. 29 U.S.C. § 2614(a). The FMLA makes it unlawful for an employer to interfere with an employee's attempt to exercise any FMLA rights and forbids an employer from retaliating against an employee who exercises FMLA rights. 29 U.S.C. §§ 2615(a)(1)-(2). Jordan advances both interference and retaliation theories of recovery.

   **1. Interference with Plaintiff's rights under the FMLA**

   **a. Involuntary full FMLA leave**

   Jordan claims that Defendants interfered with his attempt to exercise his FMLA rights by refusing to grant him his choice of intermittent FMLA leave and instead requiring him to take a full leave. To prevail on his FMLA interference claim, Jordan "need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required." *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (citing *Hoge v. Honda Am. Mfg., Inc.*, 384 F.3d

238, 244 (6th Cir. 2004)). Accordingly, Jordan must establish that: (1) he was eligible for the FMLA's protections; (2) BRC was covered by the Act; (3) he was entitled to leave under the Act; (4) he provided sufficient notice of his intent to take leave; and (5) Defendants denied him FMLA benefits to which he was entitled. *Id.* The parties dispute only whether intermittent leave (as opposed to full or continuous leave) under the FMLA is a benefit to which Jordan was entitled. If so, then Defendants' imposition of full leave deprived Jordan of an FMLA benefit.

FMLA provides an entitlement to leave "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D). Such leave may be taken intermittently when "medically necessary." 29 U.S.C. § 2612(B)(1). Jordan claims that because this permissive language is juxtaposed with situations in which intermittent leave "shall not be taken," the statute creates in the employee the right to an option to take intermittent leave. However, some courts have found that this option is not available to an employee who cannot perform the essential functions of the job while at work. *See, e.g., Hatchett v. Philander Smith College*, 251 F.3d 670, 677 (8th Cir. 2001) ("In short, the legislative history demonstrates that the FMLA protects an employee who must leave work . . . for medical reasons, as long as that employee can perform the job while at work."). Courts have also noted that nothing in the FMLA prohibits employers from requiring employees to take unpaid leave. *See Moss v. Formosa Plastics Corp.*, 99 F. Supp. 2d 737, 740 (M.D. La. 2000) (finding that employer was within its rights when it placed an employee who had experienced two epileptic seizures while on the job on involuntary FMLA leave); *Harvender v. Norton Co.*, No. 96-CV-653, 1997 WL 793085, at *6 (N.D.N.Y. Dec. 15, 1997) (citing *Love v. City of Dallas*, No. 3:96-CV-0532-R, 1997 WL 278126, at *6 (N.D. Tex. May 14, 1997)).

7

Defendants claim that when Jordan submitted his leave certification form he was not, as he asserts, merely providing advance notice of a future need for leave, but alerting Defendants to a potential safety hazard should he become suddenly unable to perform the functions of his position. "An employee is deemed unable to perform the functions of his position when he is 'unable to perform any one of the essential functions of [his] position.'" *Burnett,* 472 F. 3d at 478 (citing 29 C.F.R § 825.115 (2007)).[2] Defendants assert, and Jordan does not dispute, that safety-related tasks were essential functions of Jordan's position as a yardmaster. In response to the question, "If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job? If yes, please list the essential functions of the employee is unable to perform," Jordan's doctor indicated that Jordan would be unable to perform "safety-type related tasks" when he was "upset and feeling harassed." Because the event that would trigger Jordan's inability to perform essential functions of his job could happen at any time without notice, BRC was justified in relying on Jordan's doctor's representation of his serious health condition and requiring him to take full leave pending the resolution of the condition.

BRC's decision to place Jordan on full FMLA leave did not violate the substantive provisions of the FMLA or the regulations promulgated pursuant to the FMLA. Defendants did not interfere with or restrain Jordan's exercise of rights under FMLA because, once he was placed on leave, Defendants recognized the protected status of his leave and provided procedures

---

[2] On November 17, 2008, the Department of Labor issued revisions to the 1995 FMLA regulations. Because the actions under consideration here occurred before the revisions, this opinion cites to the previous Code of Federal Regulations.

for the leave to end earlier than the 12-week period should Jordan show that he was able to perform the essential duties of his position.

### b. Failure to reinstate

Jordan next claims that BRC's return-to-work requirements interfered with his benefits under FMLA because the Act protects an employee's right to reinstatement to the same or equivalent position upon returning to work. 29 U.S.C. § 2614(a)(1). Jordan asserts that he should have been returned to his position as soon as Defendants received his doctor's note indicating that he was able to return to work. Jordan claims that instead, Defendants' attempts to clarify Jordan's medical condition were impermissible under FMLA regulations. Jordan claims that BRC's return-to-work policy was not uniformly applied, that his doctor's note stating that he was able to return to work was sufficient to warrant his reinstatement under the regulations, that BRC attempted to secure a HIPAA authorization that was too broad, and that BRC's insistence that he submit to a return-to-work physical was impermissible.

Defendants argue that an employer has the right to clarify whether an employee can perform the functions of his position and that the steps BRC used to obtain the clarification were proper under the regulations. The parties agree that the controlling regulatory section is 29 C.F.R. § 825.310, entitled "Under what circumstances may an employer require that an employee submit a medical certification that the employee is able (or unable) to return to work (i.e., a "fitness-for-duty" report)?"

### i. Uniform application of certification requirement

Subsection (a) states that an "employer may have a uniformly-applied policy or practice that requires all similarly-situated employees (i.e., same occupation, same serious health

9

condition) who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work." 29 C.F.R. § 825.310(a). Jordan claims that BRC's policy was not uniformly applied but rather applied on a case-by-case basis, thus interfering with his right to reinstatement to his position. Defendants reply that Jordan's was the first such FMLA leave request for the company and as a result, Jordan cannot show that BRC did not apply its policy uniformly. Coffey asserts that all employees absent from work for any time period are required to complete a return-to-work form and a return-to-work examination if the absence is due to a condition or injury that compromises his or her ability to perform the essential functions of his or her job. Jordan fails to provide evidence that BRC did not uniformly apply its FMLA health care certification policy, and therefore his claim for interference on the grounds that the policy was not uniformly applied must fail.

### ii. Sufficiency of doctor's note

In support of his claim that his doctor's note was sufficient to justify his return to work, Jordan relies on subsection (c) of the regulation, which states that "[a]n employer may seek fitness-for-duty certification only with regard to the particular health condition that caused the employee's need for FMLA leave. The certification itself need only be a simple statement of an employee's ability to return to work." 29 C.F.R. § 825.310(c). The note, dated August 30, 2006 reads in full, "Mr. Jordan is hereby released from Medical Family Leave Act. Mr. Jordan is able to return to work." The Seventh Circuit has not addressed what constitutes sufficient information to satisfy the "simple statement" requirement, perhaps because the plain meaning of the phrase requires no explanation. The doctor's note presented here does simply state Jordan's ability to return to work. The Court of Appeals made clear that "the FMLA requires an

employer to allow an employee to return to work based solely upon the certification of the employee's own heath care provider" when it held that "any requirement imposing a greater burden on the employee than the return-to-work provisions of the FMLA violate [sic] the employee's rights." *Baumgarden v. Challenge Unlimited, Inc*., No. 04-CV-568, 2005 WL 3164227, at *3 (S.D. Ill. Nov. 28, 2005) (citing *Harrell v. U.S. Postal Serv*., 415 F.3d 700, 713 (7th Cir. 2005), *vacated* on an unrelated issue 445 F.3d 913, (7th. Cir. 2006)).[3] "[O]nce an employee submits a statement from her health care provider which indicates that she may return to work, the employer's duty to reinstate her has been triggered under the FMLA." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1004 (6th Cir. 2005); *see also Underhill v. Willamina Lumber Co.*, No. 98-630-AS, 1999 WL 421596, at *7 (D.Or. May 20, 1999) (finding that a letter from the employee's doctor state that the employee can return to work is specific enough to constitute a fitness-for-duty certification and require reinstatement "regardless of whether Defendant had concerns about plaintiff's ability to do his job").

While BRC was permitted to request clarification from Jordan's doctor about his fitness to return, the regulation prohibits an employer from delaying reinstatement pending contact with the doctor. 29 C.F.R. § 825.310(c) ("The employer may not delay the employee's return to work while contact with the health care provider is being made."). Jordan had the right to be employed in his former, or an equivalent, position while any inquiry was being made. Jordan's return to work release from his physician was without restrictions, and Defendants were obligated under the FMLA to honor the release. Therefore, Defendants did interfere with

---

[3] In *Harrell*, the Seventh Circuit held that the Postal Service was allowed to impose a more stringent return-to-work certification than the simple statement by the employee's own physician because the stricter return-to-work restrictions were incorporated in the valid collective bargaining agreement between the employer and the employee.

11

Jordan's rights under the FMLA by not reinstating him upon his doctor's certification of his fitness for duty.

### iii. Breadth of Defendants' HIPAA authorization form

Jordan next argues that Defendants interfered with his FMLA rights by seeking to obtain more information about his health than the regulations allow. Defendants presented Jordan a HIPAA authorization form that would have allowed for an impermissibly broad disclosure of his health information to his employer. The relevant part of subsection (c) reads:

> A health care provider employed by the employer may contact the employee's health care provider with the employee's permission, for purposes of clarification of the employee's fitness to return to work. No additional information may be acquired, and clarification may be requested only for the serious health condition for which FMLA leave was taken.

29 C.F.R. § 825.310(c). Defendants requested Jordan's permission to contact his doctor for clarification about his work release and twice provided him with its standard HIPAA authorization form to sign. The form sought release for "any and all medical records and information relating to [Jordan's] care and treatment including treatment for pre-existing conditions" to "The Belt Railway Company of Chicago, its designated Case Manager and/or its agent, the Director of Risk Management." Jordan refused to sign the HIPAA authorization form.

BRC's HIPAA authorization request violates subsection (c) because it requests information beyond that pertaining to Jordan's "serious health condition for which FMLA leave was taken." It also requests permission for a wide range of BRC's management to receive this information rather than limiting the disclosure to a health care provider employed by the company.

### iv. Fitness for duty examination requirement

Jordan's final claim of interference with his FMLA rights is that BRC impermissibly required a return-to-work physical that was to be performed by a physician of its choosing before Jordan could return to work. The controlling regulation is 29 C.F.R. § 825.310(c). As outlined above, this section allows an employer to require a fitness-for-duty certification from the employee's physician and to seek clarification about the certification from the doctor if necessary. Furthermore, the regulation prohibits an employer from seeking a second or third certification. 29 C.F.R. § 825.310(e). An employer may not require an employee whose own physician has certified him fit to work to submit to a return-to-work physical prior to allowing the employee to return to work. *See Baumgarden*, 2005 WL 3164227, at *3 ("It is clear that defendant violated plaintiff's rights under the FMLA by requiring him to submit to a further fit-for-duty exam by defendant's company selected doctor prior to allowing him to return to work when he had already been certified fit to return to work by his own doctor as required under the FMLA."). Defendants improperly rely on subsection (b)'s examples of appropriate medical examinations that an employer may require to argue that the regulations permit return to work physicals conducted by the employer's choice of physician. 29 C.F.R. § 825.310(b) ("An employer may require a warehouse laborer, whose back impairment affects the ability to lift, to be examined by an orthopedist. . . ."). However, subsection (b) refers to the stricter return-to-work requirements that may be contained within the terms of a collective bargaining agreement or to situations in which state or local laws provide for such requirements. *Id.*, *see also Harrell v. U.S. Postal Service*, 445 F.3d 913, 927 (holding the Department of Labor regulations reasonably interpret 29 U.S.C. § 2614(a)(4) to allow a collective bargaining agreement to impose stricter return-to-work restrictions than those otherwise incorporated into the FMLA). The record does not indicate that BRC's return to work requirements were negotiated under its

collective bargaining agreement, nor do Defendants point to any state or local laws that allow an employer to impose stricter return-to-work requirements than allowed by the FMLA.

I find that Defendants interfered with Jordan's rights under the FMLA by (1) failing to reinstate him to his former or equivalent position upon submission of his doctor's note, (2) requesting a medical information release that was too broad, and (3) improperly requiring a return-to-work examination by an employer's physician prior to allowing him to return to work. Accordingly, I grant Jordan's motion for summary judgment with respect to his claim for FMLA interference.

### 2. FMLA Retaliation

Jordan advances a second theory of recovery that Defendants retaliated against him for protesting their treatment of his FMLA claim and attempts to return to work. In his motion for summary judgment, Jordan cites Defendants' "actions leading to and including" his discharge as the basis for his retaliation claim. Jordan specifically complains that Coffey retaliated against him for complaining about unlawful FMLA practices when Coffey altered Jordan's return to work form, instigating the conflict that led to a disciplinary hearing that ultimately resulted in the termination of his employment. Jordan filed his complaint before the occurrence of the investigation and subsequent discharge. As a preliminary issue, Defendants argue that since Jordan did not amend his complaint to include the claim that his discharge was the basis of his retaliation claim, he may not now include such an assertion. Generally, a Plaintiff may not amend his complaint through arguments in his summary judgment brief, *see Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). However, I will include his termination in this analysis because it was a foreseeable outcome of the then-pending disciplinary investigation that was included in Jordan's original complaint. Furthermore, the parties have briefed the issue of

retaliatory discharge, and further discovery is not required before a motion for summary judgment may be granted.

The FMLA provides employees protection in the event they are discriminated against for exercising their rights under the Act. 29 U.S.C. § 2615(a)(1)-(2). Unlike a claim for interference, "when an employee raises the issue of whether the employer discriminated against an employee by taking adverse action against the employee for having exercised an FMLA right, the question of intent is relevant." *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). A plaintiff may proceed under a direct or indirect method of proof to establish a prima facie case. *Burnett,* 472 F.3d at 481. "Once the *prima facie* case is established, the burden shifts to the employer to produce a non-discriminatory reason for its action; if the employer meets this burden, the burden shifts back to the employee to demonstrate that the proffered reason is pretextual." *Caskey v. Colgate-Palmolive Co.,* 535 F.3d 585, 593 (7th Cir. 2008).

### a. Direct method of proof

"Under the direct method, [a plaintiff] must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Id*. (citing *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 404 (7th Cir. 2007)). Under this method, Jordan satisfies the first two elements. He engaged in activity protected by the FMLA by requesting and receiving leave for a serious health condition. And he experienced an adverse employment action: his conflict with Coffey on September 20, 2006, led to a disciplinary investigation which ultimately resulted in Jordan's discharge.

Jordan may rely on either direct or circumstantial evidence to establish the third element of his discrimination claim, a causal connection between elements one and two. *Id.* (citing

*Lewis v. School Dist. # 70,* 523 F.3d 730, 742 (7th Cir. 2008)). Jordan has no direct evidence (such as a statement by Defendant Coffey) that the disciplinary hearing or discharge was motivated by retaliatory intent, so he must rely on circumstantial evidence to establish the point. "Circumstantial evidence allows the trier of fact to *infer* intentional discrimination by the decisionmaker, typically through a longer chain of inferences." *Id.* (citation omitted).

Jordan asks that I infer a causal connection between his request and receipt of FMLA leave and the adverse employment action he experienced. He argues that BRC, and specifically Coffey, instigated a conflict in retaliation against him for his complaints about BRC's unlawful practices when Coffey altered Jordan's return-to-work form. According to Jordan's confusing and somewhat circular argument: Coffey's disagreement with the characterization of Jordan's leave as "forced leave" meant that Coffey would not tolerate Jordan's complaints over BRC's treatment of his request for FMLA leave; the disagreement led to the alteration of the form; the alteration of the form led to the dispute; and therefore the dispute was "caused by Jordan's complaint of unlawfully being barred from taking intermittent leave." The dispute resulted in the investigation, and the investigation resulted in Jordan's termination. This argument is not persuasive. Coffey altered the form so as to accurately describe Jordan's leave from work as "FMLA leave" as opposed to "forced leave," Jordan's preferred characterization. The investigation and subsequent termination that ensued were the result of Jordan's insubordinate and discourteous conduct toward BRC office staff as well as his accumulating record of workplace infractions and correspondingly progressive disciplinary rebukes, rather than the result of Defendants' retaliation against Jordan for exercising his FMLA rights. On the basis of these circumstances, I refuse to infer the causal connection necessary to satisfy the direct method of proof.

### b. Indirect method of proof

Under the indirect method, Jordan must establish that he (1) engaged in a statutorily protected activity; (2) met his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Caskey,* 535 F.3d at 593. Because he has not provided sufficient evidence to satisfy the fourth element, Jordan's retaliation claim fails under the indirect method of proof.

Jordan attempts to satisfy the fourth element by comparing his situation to an incident that occurred with Robert Ward, another BRC employee. "The similarly situated inquiry is . . . based on 'substantial similarity' rather than a strict 'one-to-one mapping between employees,' but still requires 'enough common features between the individuals to allow [for] a meaningful comparison.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th. Cir. 2008) (citations omitted). A meaningful comparison serves "to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination." *Id.* (citation omitted). In this case, Jordan can isolate the critical independent variable – exercise of FMLA rights – by identifying an employee who engaged in misconduct similar to his discourtesy, quarrelsomeness, and insubordination. *See Nichols v. S. Ill. University-Edwardsville*, 510 F.3d 772, 786 (7th Cir. 2007) (requiring plaintiffs to identify an employee who had engaged in similar misconduct in order to satisfy the similarly situated requirement).

Accepting Jordan's version of the facts as true, Jordan and Ward engaged in a heated exchange over the telephone on November 11, 2002, in which Ward launched into a profanity laced tirade calling Jordan profane names. Jordan responded, "If you want to call me names . . .

come say it to my face." Neither party was formally disciplined for the exchange. Jordan claims that this incident and the September 2006 incident involving himself, Coffey, and Homan are similar because the actors "broke the same rule." However, while Ward's conduct could be characterized as quarrelsome and discourteous, it was not insubordinate because Jordan was not Ward's superior. Furthermore, the men were not situated similarly within BRC. Jordan held the position of yardmaster, which has no supervisory responsibilities. Ward is referred to in the record alternatively as a right of way supervisor and as a road master, and his position did have supervisory duties, although because he was in a different department, he did not directly supervise Jordan. The record also does not show that Ward had a comparable record of progressive discipline. Jordan's showing that Ward was not disciplined for the November 2002 incident does not prove that Jordan was treated less favorably than a similarly situation employer who did not engage in the statutorily protected activity.

Because Jordan fails to establish a *prima facie* case of retaliation by either the direct or indirect method of proof, I grant Defendants' motion for summary judgment with respect to Count IV of Jordan's complaint regarding FMLA retaliation.

**V. Conclusion**

For the foregoing reasons, the cross-motions for summary judgment are both granted in part and denied in part. I grant Defendants' motion with respect to Jordan's claim for race discrimination under § 1981 (Count I) and with respect to Jordan's claim for FMLA retaliation

(Count IV). I grant Plaintiff Jordan's motion with respect to interference with his FMLA right to return to work (Count III).

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: March 4, 2009